**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| VIVIAN J. CLEMENTE | : | CASE NO. 07-42648-JBR |
| <u>DEBTOR</u> | : | |
| DAVID M. NICKLESS, CHAPTER 7 TRUSTEE, | : | |
| Plaintiff | : | |
| v. | : | Adv. Pro. No 07-4160 |
| GERALD A. CLEMENTE, a/k/a GERALD A. | : | |
| CLEMENTE, JR. and MARTHA W. CLEMENTE | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter came before the Court for hearing on the Chapter 7 Trustee's Cross Motion for Summary Judgment [#50] along with the supporting Memorandum of Law [# 51] and the Trustee's Affidavit [#52], and the Defendant's Opposition to the Cross Motion for Summary Judgment [#62]. Following the hearing the parties submitted supplemental memoranda [#66 (Trustee's Supplemental Brief); ##67 and 68 (Defendant's Amended Supplemental Brief and exhibits thereto)]. Subsequently the Defendant moved the Court to delay entering its decision pending receipt of the Trustee's response to a motion for Fed. R. Bankr. P. 9011 sanctions served on the Trustee.[1]

For the reasons set forth herein, the Trustee's Cross Motion for Summary Judgment will be denied.

**FACTS**

---

[1] That motion has now been filed with the Court.

On May 11, 1989, the Debtor, the Defendant, and the Defendant's brother acquired title to property located at 10 Cutler Street, Worcester, Massachusetts (the "Property") as joint tenants with rights of survivorship. The Property included a three family house located on the approximately 9,000 square foot parcel. In or about January 2003 the owners of the funeral home located next to the Property sought to acquire some of the land behind the dwelling to use as a parking lot but no sale occurred at that time. By deed dated March 4, 2003, the Debtor, the Defendant, and his brother transferred a portion of the Property, described as "Lot 1 on a plan entitled 'Plan of Land in Worcester, MA, Prepared for: John J. Kazluaskas" dated January 7, 2003, made by B&R Survey, Inc., recorded in the Worcester District registry of Deeds in Plan Book    , Plan    , bounded and described as follows: ..." ("Lot 1") to the Defendant and his wife, as tenants by the entirety, for the stated consideration of $1.00. The deed was never recorded. On May 23, 2003 the Defendant alone signed a mortgage on the property in favor of CIT Group/Consumer Finance in the amount of $140,000 but approximately six months later, on November 6, 2003, both the Debtor and the Defendant's wife executed the same document.

On January 7, 2004, the Defendant's wife died. On January 23, 2004, the Debtor, the Defendant, and the Defendant's brother executed a quitclaim deed transferring all of the Property, including Lot 1, to the Defendant for stated consideration of less than $100.00. On the same date the Defendant executed a mortgage on the property in favor of Sherwood Mortgage Group, Inc. to secure repayment of a $151,000 note. The January 23, 2004 deed and the mortgage were recorded in Registry of Deeds on January 28, 2004.

According to the document styled "Plan of Land in Worcester, MA, Prepared for: John J. Kazluaskas dated January 7, 2003, made by B&R Survey, Inc." (the "Plot Plan"), the Property

2

was divided into two lots: Lot 1, the front portion of the Property, which was approximately 7,350 square feet and included the three-family house, and Lot 1A, an approximately 1,650 square foot parcel located at the rear of the Property. The Plot Plan was recorded at the Registry of Deeds on December 30, 2004.

On or about January 5, 2005, the Defendant sold Lot 1A to the owners of the funeral home for consideration which ,according to the deed, was $15,000. The Trustee asserts that the consideration was $20,000, $5,000 of which was offset by the amount owed for funeral services rendered in connection with the Defendant's wife's death. An additional $1,360.40 was deducted from the purchase price by Attorney Edward Simsarian for his services in connection with the sale of Lot 1, leaving the Defendant with $13,639.60. On January 20, 2006, the Defendant sold the Property, minus Lot 1, for $325,000. After payment of the mortgage and expenses of the closing, the Defendant received $97,000, which he used to purchase a new residence. Neither the Debtor nor the Defendant's brother received any portion of the sale proceeds.

The Defendant submitted an affidavit in which he testified he used some unspecified portion of the $13,639.60 to improve the three family house, including painting and repairing the apartments on the first and second floor of the building. He also testified he spent $18,000 to re-side the building in May 2005. In addition the Defendant averred that he made other general improvements, including building a handicapped ramp for his son. He did not provide a specific amount he spent for all the improvements. Moreover the Defendant testified that he did not collect rent for all months in which he allegedly owned the property, either with his wife or individually. He did not provide the Court with the amount of rent he actually collected during

the relevant period of time.

The Debtor filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code on July 12, 2007. Documents she supplied to the Trustee and attached to the Trustee's Affidavit indicate that the Debtor received social security income of $13,339.20 in 2004; $13,694.40 in 2005, and $14,262.00 in 2006.

**TRAVEL OF THE CASE**

The Trustee commenced the instant adversary proceeding on October 18, 2007. Subsequently the Defendant filed a *pro se* motion to dismiss in both the adversary proceeding and in the bankruptcy case.[2] A hearing was held on the motion to dismiss in the main case and the adversary proceeding; the motion was denied by orders dated October 2, 2008 entered in both the main case and the adversary proceeding.

The Trustee's Opposition to the Motion to Dismiss contained a cross motion for summary judgment to which the Defendant did not respond. In light of his *pro se* status, however, the Court gave the Defendant time within which to retain counsel and file a response to the Trustee's cross motion. The Defendant retained counsel who appeared at the continued hearing on the cross motion for summary judgment and who has filed the supplemental

---

[2]Initially the Defendant sought dismissal of this fraudulent conveyance action on the grounds that there was no intent to defraud. The Trustee argued that intent to deceive was not needed if the transfer was for less than reasonably equivalent value and (1) under M.G.L. c. 109A, § 6, the Debtor was or became insolvent as a result of the transfer or (2) under § 5 of M.G.L. c. 109A, the Debtor incurred or believed or reasonably should have believed she would incur debts she would be unable to pay. The Trustee relied on the facts that the Debtor was retired at the time of the transfer, that she was transferring balances between credit cards at least as early as June 2004, that her May 2005 credit report lists debts of over $25,000, and that her bankruptcy schedules indicate unsecured debt of approximately $65,000 and assets, consisting primarily of exempt assets, of approximately $10,000. At the hearing on the Motion to Dismiss, the Defendant argued that the action was barred by the statute of limitations.

pleadings.

**POSITION OF THE PARTIES**

The Defendant argued in his response to the Trustee's cross motion that the transfer occurred more than four years prior to the commencement of the bankruptcy when the March 2003 deed was executed while the Trustee countered that transfer occurred within the four year limitation period as the January 2004 deed is the controlling deed.[3] At the hearing, the Defendant's counsel elaborated that M.G.L. c. 109A, § 7(3) applied, thereby setting the effective date of the transfer at March 4, 2003, the date of the unrecorded deed.

In his amended supplemental pleading, the Defendant seems to have conceded the inapplicability of M.G.L. c.109A, § 7(3) although he continues to advance this position by arguing that Massachusetts is a race/notice jurisdiction. The Defendant also argues that the Trustee has not identified any creditor whose claim arose before the effective date of the transfer, that there is a genuine issue of material fact as to the facts needed to establish liability under M.G.L. c. 109A, § 6, and that the Debtor had no interest in Lot 1 on the date of the transfer at issue. The Trustee counters that, although he believes he has established the Defendant's liability under M.G.L. c. 109A, § 6, he is also proceeding under M.G.L. c. 109A, § 5, which does not rely upon the existence of a creditor in existence at the time of the transfer.

**DISCUSSION**

Fed.R.Civ.P. 56(c), made applicable by Fed. R. Bankr.P. 7056, provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving

---

[3]In the motion for sanctions, the Defendant argues that the Trustee initially raised the argument that the M.G.L. c. 109A, § 7 applied to the March 2003 deed. This issue is not relevant to the issue presently before the Court.

5

party is entitled to judgment as a matter of law." As this Court has previously stated in *In re Malden Mills Industries, Inc.*, 277 B.R. 449, 457 (Bankr. D. Mass. 2002),

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts." Fed.R.Civ.P. 56(c), Fed. R. Bankr.P. 7056. "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trialworthy issue as to some material fact." *Coyne v. Taber Partners I,* 53 F.3d 454, 457 (1st Cir.1995). "A fact is 'material' if it potentially could affect the suit's outcome." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). "An issue concerning such a fact is 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.), cert. denied, 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). The evidence must be examined in a light most favorable to the nonmoving party and "indulge all reasonable inferences" to the nonmovant. *Garside,* 895 F.2d at 48. "On issues where the nonmovants bear the burden of proof, however, they must reliably demonstrate that specific facts sufficient to create an authentic dispute exist." *Id.* (citations omitted). The evidence needed to withstand a motion for summary judgment must be sufficiently probative of a material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Trustee asserts that he is entitled to judgment under § 5 and/or § 6 of the Massachusetts Uniform Fraudulent Transfer Act, codified at M.G.L.c. 109A ("UFTA"). Section 5 sets forth the elements by which any creditor, without regard to when the claim was acquired, may set aside a transfer. Section 6 sets forth the elements which entitle a creditor who held a claim at the time of the transfer to avoid the transfer.

<u>M.G.L.c. 109A, § 5</u>

M.G.L.c. 109A, § 5 provides in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made

>or the obligation was incurred, if the debtor made the transfer or incurred the obligation: ...
>
>(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:...
>
>(ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due....

The Trustee relies upon the following facts to establish that the Debtor believed or reasonably should have believed that she would incur debts beyond her ability to pay as they became due: the Debtor was retired at the time of the transfer, she was transferring balances between credit cards as least as early as June 2004, her May 2007 credit report lists debts of over $25,000, and her bankruptcy schedules indicate unsecured debt of approximately $65,000 and assets, consisting primarily of exempt assets, of approximately $10,000.  Because the transfer occurred in January 2004, the Debtor's schedules filed more than three years after the transfer are not indicative of what the Debtor should have reasonably anticipated she could pay when the transfer occurred.  Similarly the credit report is dated May 2007 and although it contains account balances for various open accounts dating back to May 2005, this date is similarly too far removed from the transfer to find the Debtor should have believed she could not pay her debts as they came due.  There was no evidence as to what the account balances, if any, were at or shortly following the time of the transfer nor is there evidence that the Debtor was not satisfying the minimum monthly amounts due.  "In determining whether a debtor had the ability to pay a credit card obligation, 'payment' should be defined as paying the minimum amount required under the credit card agreement."  *In re Rossiter*, 2002 WL 31987288, *6 (Bankr. E.D.Pa.)(internal quotations and citations omitted).  Similarly the July 4, 2004 American Express statement, which reflects that the Debtor transfered a balance of $4,000 from a Capital One credit card, does not

Case 07-04160   Doc 72   Filed 02/02/09   Entered 02/02/09 09:58:32   Desc Main
           Document      Page 8 of 9

support a finding that the Debtor transferred the balance because she could not afford to pay the minimum monthly amount to Capital One. The Debtor may have transferred the balance to take advantage of a reduced rate on transferred balances. This Court will not guess as to why the balance was transferred.

<u>M.G.L. c. 109A,§ 6.</u>

Section 6 of the UFTA provides in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Liability under this section depends not only on the transfer having been made for less than reasonably equivalent value but also a showing that either the Debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. For the purposes of the UFTA, a presumption of insolvency arises if either (a) the sum of the Debtor's debts is greater than all of the debtor's assets, at a fair valuation or (b) the Debtor is generally not paying debts as they become due. M.G.L. c. 109A §3. Assuming the existence of a pre-transfer creditor and that the transfer was for less than reasonably equivalent value, the Trustee's motion must be denied as he has failed to demonstrate that the Debtor was insolvent at the time of the transfer. As noted above, there is no evidence that she was not paying the minimum monthly balances on whatever open accounts she had at the time of the transfer nor is there evidence that, at the relevant time, her liabilities exceeded her assets. The earliest evidence of her liabilities is based on the May 2007 credit report, which only provides information from May 2005 forward. Moreover as the Defendant argues, the Trustee is assuming that the Debtor's sole source of

8

income at the time of the transfer was her social security income.  The Court cannot make such an assumption at this stage of the proceeding.

Finally, to the extent that the Defendant is seeking to rely on the complaint being time barred, the Defendant's argument fails.  Although the Defendant is correct that the earlier deed is effective against the parties to the deed, it is not binding against any creditor who lacked actual knowledge of the transfer.  Based on the record currently before the Court, there is nothing to suggest that the earlier deed is effective against the creditors in existence at the time the earlier deed was executed.

Dated:  February 2, 2009        _____
                                Joel B. Rosenthal
                                United States Bankruptcy Judge